## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

KEVIN OLSON,

        Plaintiff,

v.                                                      Case No. 16-2194

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Kevin Olson seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits. The parties filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#11)** be **DENIED**, Defendant's Motion for Summary Judgment **(#14)** be **GRANTED**, and the decision to deny benefits be affirmed.

## I.   Background

On June 19, 2012, Plaintiff applied for a period of disability and disability insurance benefits, alleging disability beginning February 24, 2011. The Social Security Administration initially denied Plaintiff's claims on November 21, 2012, and again upon reconsideration on March 12, 2013. Plaintiff appeared and testified at a video hearing before an Administrative Law Judge (ALJ). The ALJ also heard testimony from an impartial vocational expert.

On November 26, 2014, the ALJ issued an unfavorable decision. (R. 41-40.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 24, 2011 (R. 23) and that Plaintiff has the severe impairments of status-post traumatic brain injury and anxiety (20 CFR 404.1520(c)). (R. 23.) The ALJ determined that Plaintiff does

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (R. 24.) Additionally, the ALJ found that Plaintiff has the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to the performance of simple and repetitive tasks involving little or no change in work routine, and he needs to have the flexibility to be able to meet the competitive work production standards of an employer on a per shift rather than per hour basis.

(R. 26.) The ALJ found that while Plaintiff could not perform any past relevant work, there were several jobs, existing in significant numbers in the national economy, available to Plaintiff given his age, education, experience, and RFC. (R. 39.) The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision.

## II.    Standard of Review

In reviewing the ALJ's decision, this Court does not review the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## III.    Analysis

Plaintiff argues that the ALJ's decision denying his request should be reversed for three reasons. First, Plaintiff contends that the ALJ's RFC finding lacked substantial support. Second, Plaintiff alleges that the ALJ erred in concluding that Plaintiff's part-time employment demonstrated a capability for full-time employment. Third, Plaintiff asserts that the ALJ's symptom analysis was improper.

### a. RFC Was Supported by Substantial Evidence

First, Plaintiff contends that the ALJ's mental functional capacity finding lacked substantial support. "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Id.* Additionally, "[t]he ALJ is required to determine which treating and examining doctors' opinions should receive weight and must explain the reasons for that finding." *Id.*

Plaintiff's injuries stem from a car accident occurring on December 2, 1992, which left Plaintiff in a coma for 24–48 hours. (R. 27.) Plaintiff received therapy from December 22, 1992 to January 26, 1993, where he saw significant improvements. *Id.* Plaintiff has since received annual check-up appointments from a variety of medical professionals.

In determining Plaintiff's RFC, the ALJ first considered all of Plaintiff's symptoms by following the appropriate two-step approach. First, the ALJ determined "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (R. 26.) Second, the ALJ evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit[ed] the claimant's functioning." (R. 26.)

The ALJ then compared Plaintiff's alleged symptoms—which included short-term memory deficit, a slowness in processing information, stress, and the inability to work 8-hour work days—to all the available evidence. (R. 27.) This evidence included medical testimony from Plaintiff's treating physicians, opinions from consulting physicians, Plaintiff's daily activities, and other nonmedical testimony.

3

The ALJ found that Plaintiff could work at "all exertional levels" so long as the tasks were "simple and repetitive" and he had "the flexibility" to meet the requirements of a day-time employee. (R. 26.) Plaintiff argues that the ALJ did not support his RFC with substantial evidence. The Court must therefore determine whether the ALJ adequately supported his findings with substantial evidence and explained the reasons for such findings. As explained below, the ALJ did just that.

### i.  Plaintiff's Medical Providers

First, the Court looks to the medical evidence. An ALJ must give controlling weight to a treating source's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Punzio v. Astrue*, 630 F. 3d 704, 710 (7th Cir. 2011) (citing § 404.1527(c)). The ALJ considers the length of the physician's treatment, among other factors, when determining the weight given. § 404.1527(c)(2)(i). Here, the ALJ considered the medical evidence and explained the reasons for his findings.

Paul Smucker, MD began treating Plaintiff around the time of his accident. Just eight months after Plaintiff's accident, Dr. Smucker stated that Plaintiff was "doing extremely well in all respects" and that he "could resume his regular job duties from a medical standpoint"—which included working at a restaurant as an assistant manager roughly fifty hours per week. (R. 28.) Between 1993 and 2001, Plaintiff continued to see Dr. Smucker annually. (R. 514–97.) Throughout this time, Dr. Smucker never restricted Plaintiff's ability to work or limited Plaintiff's work-related activities. (R. 525, 535.) As of 2001, Dr. Smucker did not report any new or worsening issues with Plaintiff and provided "no new recommendations." (R. 544).

Dr. Victoria Johnson also treated Plaintiff during much of the relevant time period. In 2003, Dr. Johnson stated that there was no reason Plaintiff could not work a 40-hour work week given his present condition, and found "no reason to limit his work hours." (R. 548.) The records indicate that Dr. Johnson next saw Plaintiff on May 9, 2005. According to the record, Plaintiff was in Dr. Johnson's office for her "to fill out his attending physician statement for his disabilities." (R. 550). Without any examination or explanation for her

4

changed opinion, she opined that "he is disabled from all but his current occupation" and that he is unable to work "much more than 12 to 15 hours per week." (*Id.*). Dr. Johnson also referred Plaintiff to Dr. Jian Li for follow up, if he requires it.

Dr. Li then saw Plaintiff August 31, 2006, apparently for examination and to "fill out his disability forms." At that time, Dr. Li found that he could "handle his current part-time job." (R. 552). He again saw Dr. Li a number of times thereafter, at which time Plaintiff sought to have his disability insurance forms filled out. (R. 553). Throughout this time, Dr. Li repeatedly stated that Plaintiff could work without restriction, except that he suffered from some cognitive and memory deficits. In fact, at times, Dr. Li stated that Plaintiff had the ability to work full-time with no restrictions. (R. 604–11.) In 2008, however, Dr. Li, despite noting no change to Plaintiff's conditions, limited Plaintiff to part-time work. (R. 603.) But even then, Plaintiff continued working the same 12-15-hour work week that he had been working for several years. (R. 33.) Dr. Li continued to treat Plaintiff with limited examinations and preparing disability forms.

An ALJ may choose to not give a treating physician's opinion controlling weight if it is inconsistent with the consulting physician's opinion or if it is internally inconsistent. *Skarbek v. Barnhart*, 390 F. 3d 500, 503 (7th Cir. 2004). An ALJ must offer "good reasons" for discounting a treating physician's opinion, and then determine what weight to give it considering (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by medical signs and laboratory findings, (4) the consistency of the opinion with the record as a whole, (5) whether the opinion was from a specialist, and (6) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6); *see Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

In 2005, Dr. Li stated that Plaintiff had no work restrictions and was released to work full-time. (R. 610–11.) Then, from 2005 to 2012, Dr. Li marked that Plaintiff's progress had "not changed." (R. 598–612.) Although Plaintiff's progress was unchanged, when completing Plaintiff's insurance forms, Dr. Li continually increased Plaintiff's work restrictions and reduced Plaintiff's work to part-time. *Id.* Because Plaintiff's progress was

unchanged, Dr. Li's reduction in work and increase in restrictions was inconsistent. Unchanged progress would suggest that Plaintiff could work full-time with no restrictions, as previously marked in the 2005 report.

Moreover, Dr. Li, as a "treating physician", did very little to actually treat Plaintiff during this time. Instead, the exams seemed to occur annually, with the primary purpose of the exam to "fill out" disability forms. This resulted in a limited treatment relationship and an opinion that is no better informed than that of a consulting physician.

Therefore, based on the totality of the evidence, the ALJ reasonably discounted Dr. Li's testimony, and reasonably relied on the testimony of Dr. Smucker and Dr. Johnson in making his RFC finding.

### ii.  Consulting Physicians' Opinions

In addition to the testimony of Plaintiff's medical providers, the ALJ relied on substantial medical evidence provided by consulting physicians Dr. Warach, Dr. McCray, Dr. Kohen, and Dr. Mehr. Each of these medical professionals supplied information supporting the ALJ's findings.

On April 3, 2014, Dr. Kohen examined Plaintiff and concluded that while Plaintiff had some short-term memory impairment, "his overall level of comprehension [was] adequate." (R. 634–37.) Dr. Kohen also reported that Plaintiff only had mild difficulty understanding, following, and carrying out simple instructions, and that he would have little to no difficulty interacting with the public, supervisors, and coworkers. (R. 637–39.)

Dr. Kohen also highlighted that Plaintiff struggled to deal with stress and to meet demands when confronted with a fast-paced, stressful situation. (R. 636.) The ALJ accounted for these limitations in the RFC by limiting Plaintiff to simple and repetitive task, with little or no changes in work processes. (R. 26.) The ALJ further limited Plaintiff to work where Plaintiff could meet production standards on a per shift basis. (R. 26.)

Dr. McCray performed neuropsychological testing and concluded that Plaintiff's Verbatim Mental Status was within the normal range and that Plaintiff's mental status exam and memory testing were within the average range of functioning. (R. 655–57.) Dr.

6

McCray originally stated that Plaintiff could not work full-time, but subsequently struck that portion of the report. (R. 669.)

Dr. Mehr examined Plaintiff on January 4, 2011 and concluded that Plaintiff "has the pace and endurance necessary to fulfill a normal work day and week on a consistent basis, to perform at a consistent acceptable rate, and would require only common numbers and lengths of rest breaks." (R. 392.)

Dr. Warach examined Plaintiff on August 14, 2014, and also concluded that Plaintiff had no physical work related limitations and could sit, stand, and walk a total of 8 hours in an 8-hour workday and lift and carry up to 100 pounds. (R. 649–55.)

These medical opinions and testimony of Plaintiff's medical professionals and consulting physicians provided substantial support for the ALJ's finding that Plaintiff was capable of full-time work. The Seventh Circuit has repeatedly affirmed decisions limiting claimants to repetitive, low-stress work to avoid triggering a claimant's symptoms. *See Arnold v. Barnhart*, 473 F.3d 816 (7th Cir. 2007) (limiting claimant to low-stress work to address stress-induced headaches and anger); *Johannsen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002) (limiting claimant to low-stress work to address panic disorder); *Sims v. Barnhart*, 309 F.3d 424 (7th Cir. 2002) (same).

### b. Part-Time Employment Supporting Full-Time Employment

Second, Plaintiff alleges that the ALJ erred in concluding that Plaintiff's part-time employment demonstrated a capability for full-time employment. In support of this argument, Plaintiff relies heavily on the assessment of Dr. Li. In May 2012, Dr. Li stated that Plaintiff was "disabled from all but his current occupation," and that he would not be able to work "much more than 12-15 hours per week as he [was] currently." (R. 408.) Based on this observation, Plaintiff alleges that the ALJ failed to support his finding that Plaintiff was able to work full-time.

The Court considered Dr. Li's opinions in the prior section, and found that the ALJ reasonably discounted Dr. Li's later opinions due to internal inconstancies. Further, the ALJ relied on substantial evidence from a variety of medical professionals in concluding that Plaintiff was not limited to part-time work.

While one's ability to work part-time does not necessarily translate to full-time work, the ALJ did not make that assumption. Instead, the ALJ's conclusion was based on many factors. For instance, the ALJ considered the substantial medical evidence discussed above. The ALJ also spent significant time detailing Plaintiff's activities of daily living, ultimately concluding that these activities supported the finding that Plaintiff could work full-time. (R. 33). And, the ALJ considered Plaintiff's ability to work part-time. When factoring these together, the ALJ's decision was supported by substantial evidence.

### c. Subjective Symptom Evaluation

Finally, Plaintiff argues that the ALJ's symptom evaluation contained several errors that require reversal. Namely, Plaintiff argues that the ALJ's reliance on a "credibility standard" was in error.

The former Social Security Regulation (SSR) 96-7p stated that an evaluation of symptoms required "a finding about the credibility of an individual's statement about pain or other symptom(s) and its functional effects . . . ." SSR 96-7p. This regulation, however, was superseded by SSR 16-3p, which eliminated "the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. Instead, adjudicators are "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms" in completing the required two-step approach. *Id.*

SSR 16-3p clarifies that the ALJ's role is not to impeach the claimant's character, but that the ALJ should continue to assess the credibility of pain assertions by the claimant. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Pain assertions "often cannot be either credited or rejected on the basis of medical evidence." *Id.* Therefore, applying SSR 16-3p, the Court must determine whether the ALJ focused on the regulatory factors, rather than Plaintiff's perceived truthfulness, in evaluating Plaintiff's subjective symptoms.

Even though the ALJ referenced Plaintiff's credibility when he stated that the "evidence suggests that the claimant has limited himself to part-time work not because

8

of his impairments, but because working full-time would likely result in termination of the monthly disability payments he receives through his private insurance company," (R. 39) the record demonstrates that the ALJ's decision was premised on review of the regulatory factors.

As analyzed above, the ALJs' decision reviewed a substantial amount of objective medical evidence—the great majority of which stated that Plaintiff had the ability to work full-time. Between 1992 and 2001, Dr. Smucker never restricted Plaintiff's ability to work or limited the type of Plaintiff's work related activities. (R. 525, 535.) In 2003, Dr. Johnson stated that Plaintiff could work full-time. (R. 548.) Between 2005 and 2008, Dr. Li stated that Plaintiff could work full-time with no restrictions, and Dr. Li annually marked Plaintiff's condition as unchanged. (R. 604–11.)

Consulting physician testimony also supported the ALJ's finding. Dr. Kohen stated that while Plaintiff had moderate difficulty with stress and remembering simple instructions, he would have no trouble interacting with the public or coworkers. (R. 638.) Dr. Warach concluded that Plaintiff could work 8-hour workdays. (R. 649–50.) Finally, Dr. McCray concluded that Plaintiff's mental tests were within normal range. (R. 658–59.) These medical opinions combine to show that the ALJ reasonably relied on available evidence when determining that Plaintiff was able to work full-time.

Plaintiff also argues that the ALJ overemphasized Plaintiff's daily activities in determining that Plaintiff could work full-time. Although the Seventh Circuit has held that the ALJ should not place undue weight on a claimant's daily activities in assessing his ability to work full-time, *see Day v. Astrue*, 334 Fed. Appx. 1, 8 (7th Cir. 2009), the Regulations specifically instruct the ALJ to consider the plaintiff's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). Based on the available medical evidence, the Court concludes that the ALJ reasonably relied on the objective evidence, without undue influence on Plaintiff's daily activities, when finding that Plaintiff was not limited to part-time work.

Finally, Plaintiff argues that the ALJ erred by discrediting the opinion of Mr. Mann, Plaintiff's employer. In support of this argument, Plaintiff cites to *Dogan v. Astrue*, 751 F. Supp. 2d 1029 (N.D. Ind. 2010), stating that SSR 06-03p provides that nonmedical

9

sources should not be rejected, but rather should be evaluated to determine impairments and functional effects. Plaintiff misreads *Dogan*.

In *Dogan*, the court discussed the difference between "acceptable medical sources" and non-"acceptable medical sources"; both sources, however, were from medical professionals. *Dogan*, 751 F. Supp. 2d at 1038. *Dogan* did not address opinions from nonmedical personnel, like Plaintiff's employer. Plaintiff also argues that the ALJ failed to apply SSR 06-03p factors regarding Mr. Mann's opinion. SSR 06-03p, however, like *Dogan*, addressed the consideration given to non-acceptable medical sources, and Plaintiff's employer is not a medical professional. *See e.g. Arnold v. Barnhart*, 473 F.3d 716, 821-22 (finding that four neighbors who were not health care professionals were not competent to refute professional medical testimony). Therefore, the ALJ acted reasonably in applying all available evidence, both medical and nonmedical, in concluding that Plaintiff was able to work full-time.

The Court, therefore, recommends denying Plaintiff's request for remand.

## IV.    Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#11)** be **DENIED**, Defendant's Motion for Summary Judgment **(#14)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 31st day of January, 2018.

s/ ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE